**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| United States of America, | No. CR-13-00846-TUC-JGZ |
| Plaintiff, | **ORDER** |
| v. | |
| Rick David McCracken, | |
| Defendant. | |

On January 30, 2014, Magistrate Judge D. Thomas Ferraro issued a Report and Recommendation ("R&R") (Doc. 56) in which he recommended that Defendant's Motion to Suppress for Lack of Reasonable Suspicion to Stop (Doc. 43) be denied.  On February 18, 2014, Defendant filed an Objection to the R&R.  (Doc. 60.)  Defendant's Objection challenges the Magistrate's finding that the testifying Border Patrol Agent was credible and that Defendant consented to a stop of his vehicle.  The government filed a response to Defendant's Objection on February 26, 2014. (Doc. 62.)  For the reasons stated herein, the Court will adopt the R&R and overrule the Objection.

**STANDARD OF REVIEW**

The Court reviews *de novo* the objected-to portions of the R&R. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The Court reviews for clear error the unobjected-to portions of the R&R.  *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999); *see also Conley v. Crabtree*, 14 F.Supp.2d 1203, 1204 (D. Or. 1998).  If the Court rejects the credibility findings of the magistrate judge, a *de novo* hearing is required.  *United States v. Ridgway*, 300 F.3d 1153, 1157 (9th Cir. 2002).

**FACTUAL BACKGROUND**

The factual background contained in Magistrate Ferraro's R&R (Doc. 56) is adopted by reference herein.  To the extent Defendant's Objection alleges erroneous factual findings by the Magistrate, those objections are addressed below.

**ANALYSIS**

Defendant objects to the Magistrate Judge's R&R on two grounds: (1) Defendant challenges the Magistrate Judge's finding that Border Patrol Agent Daniel Sturkie credibly testified that, at the time Defendant stopped his vehicle, Agent Sturkie's vehicle was pulled over on the side of the road; and (2) Defendant objects to the Magistrate Judge's conclusion that Defendant voluntarily stopped his vehicle.

**1.     Credibility of Agent Sturkie**

Agent Sturkie and Defendant offered similar testimony regarding their encounter on April 21, 2013.  Agent Sturkie drove onto Road 687 from Dragoon Mountain Ranch Road.  (TR 19-20.) Road 687 is a narrow, one-lane road that is not maintained; Agent Sturkie testified that it is a well-known "circumvention road," used by smugglers to avoid a nearby Border Patrol checkpoint.  (TR 14-15.)  On April 21, 2013, entry to Road 687 was blocked by a cattle gate, which Agent Sturkie opened and drove through.  (TR 20.) As he began to drive south on Road 687 he noticed a gold Chevrolet Tahoe traveling north on Road 687.  (TR 23-24, 32.)   Agent Sturkie testified that he pulled his unmarked Border Patrol truck to the side of the road about 100 feet from the gate and parked it.  (TR 18-19, 23.)  His vehicle was positioned approximately five feet off the road and parallel to the road.  (TR 23.)  He then got out of his vehicle and stood near the front bumper, leaning against the hood of his vehicle.  (TR 24.)  Agent Sturkie testified that, given the area's reputation as a smuggling corridor, he did not know how the occupants of the approaching Tahoe might react to seeing a Border Patrol agent.  (TR 38.)  Agent Sturkie stated that, in the event the approaching driver pulled out a gun or tried to run him over, he was safer outside of his vehicle.  (TR 38.)  Agent Sturkie testified that the gold Tahoe – driven by Defendant – slowed to a stop as it approached Agent Sturkie.  (TR 25.)

1   Agent Sturkie did not signal for the Tahoe to stop in any way.  (TR 24-25.)

2   Defendant's testimony differed from Agent Sturkie's in one key detail.  Contrary
3   to Agent Sturkie's testimony that Agent Sturkie's vehicle was pulled over to the side of
4   the road, Defendant stated that Agent Sturkie had stopped his car in the middle of the
5   gate connecting Dragoon Mountain Ranch Road and Road 687.  (TR 53.)  Defendant
6   testified that Agent Sturkie was standing in front of the unmarked Border Patrol vehicle,
7   leaning against the hood.  (TR 60.)  Defendant slowed and pulled his vehicle to the right
8   because the Border Patrol vehicle was blocking the gate.  (TR 55, 57-58.)

9   Defendant contends that Agent Sturkie's testimony regarding the location of his
10  Border Patrol vehicle was not credible because it is implausible that an agent would
11  consider it safer to wait outside his vehicle as an unfamiliar car approached in a known
12  smuggling corridor.  While Agent Sturkie's conclusion that it would be safer to wait
13  outside the car appears illogical, the Court concludes that it does not undermine Agent
14  Sturkie's credibility.  There is no issue as to whether Agent Sturkie stood outside of the
15  vehicle while he waited for Defendant's vehicle to approach.  The disputed question is
16  where Agent Sturkie had parked his vehicle while he waited.  Defendant's assertion - that
17  a Border Patrol agent would park an unmarked Border Patrol vehicle in the middle of a
18  cattle gate and then position his body in the front of the vehicle facing an oncoming
19  Tahoe is implausible, more implausible than any explanation of why the agent waited
20  outside of the vehicle in the first place. As the Magistrate Judge noted, an agent so
21  positioned would be very vulnerable – the oncoming Tahoe could sandwich the agent
22  against his vehicle, and the agent's ability to get into his vehicle and flee would be
23  hampered by the vehicle's position across a gate.  Even if the agent was hoping to
24  effectuate a stop by blocking the road, it is unlikely he would position his vehicle in the
25  middle of the gate and his body in front of the vehicle.  In addition, Agent Sturkie's
26  testimony as to the position of the vehicle was corroborated by the testimony of Border
27  Patrol Agent Brandon Caspar, who arrived on the scene 10 minutes after Agent Sturkie
28  asked for assistance and observed Agent Sturkie's vehicle parked off the road across

1    from Defendant's Tahoe just as Agent Sturkie had described.[1]  (TR 75-78.)  The Court

2    agrees with the Magistrate Judge's credibility determination.

3    **2.    Voluntary Stop**

4         Defendant contends that even if Agent Sturkie's car was parked on the side of the

5    road, Agent Sturkie compelled Defendant to stop his vehicle and did not have reasonable

6    suspicion to do so.  According to Defendant, no reasonable person driving down a one

7    lane road in a rural area would conclude that he could drive by a Border Patrol agent

8    standing outside his car on the side of the road.

9         Not all personal intercourse between policemen and citizens involves "seizures" of

10   persons.  *United States v. Mendenhall*, 446 U.S. 544, 552 (1980) (citing *Terry v. Ohio*,

11   392 U.S. 1 (1968)).  Only when the officer, by means of physical force or show of

12   authority, has in some way restrained the liberty of a citizen has a seizure occurred.  *Id.*

13   A person is seized when he is "meant to be stopped by [a particular law enforcement

14   action] ... and [is] so stopped."  *Brendlin v. California,* 551 U.S. 249, 260 (2007).

15   Examples of circumstances that might indicate a seizure include the threatening presence

16   of several officers, the display of a weapon by an officer, some physical touching of the

17   person of the citizen, or the use of language or tone of voice indicating that compliance

18   with the officer's request might be compelled.  *Mendenhall*, 446 U.S. at 554.  In the

19   absence of such evidence, inoffensive contact between a member of the public and the

20   police cannot, as a matter of law, amount to a seizure of that person.  *Id.*

21        None of the examples contemplated by *Mendenhall* are present here.    Agent

22   Sturkie was alone, he was not displaying a weapon, he did not make physical contact

23   with Defendant and he did not ask Defendant to stop.   In fact, Agent Sturkie and

24   Defendant both testified that Agent Sturkie did not signal to Defendant in any way.  (TR

25   24-25, 68.)   The Court disagrees with Defendant's assertion that a person in Defendant's

26   position would conclude he had no choice but to stop his vehicle.  The uncontradicted

27   testimony demonstrates that Agent Sturkie did not intend to stop Defendant's vehicle and

28

---

[1] Agent Sturkie testified that no vehicles were moved after Defendant stopped.  (TR 82.)

did not make a showing of force or authority to effectuate a stop.  *See United States v. Al Nasser*, 555 F.3d 722, 730 (9th Cir. 2009) (finding that defendant was not stopped within the meaning of the Fourth Amendment when he pulled over upon seeing three Border Patrol vehicles and two stopped cars on the side of the road; since there was no intentional government action directed at defendant to bring about the stop of his vehicle, there could be no Fourth Amendment seizure).  The Court rejects Defendant's objection to the Report and Recommendation on this ground.

**CONCLUSION**

Accordingly, after an independent review of the pleadings, exhibits and transcript,

IT IS HEREBY ORDERED that:

1. The Report and Recommendation (Doc. 56) is ACCEPTED AND ADOPTED as the findings of fact and conclusions of law of this Court;

2. Defendant's request for a *de novo* hearing on his Motion to Suppress (Doc. 60) is DENIED;

3. Defendant's Motion to Suppress (Doc. 43) is DENIED;

4. This matter remains referred to Magistrate Judge D. Thomas Ferraro for all pretrial proceedings and Report and Recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) and LR Civ. 72.1(a), Rules of Practice for the United States District Court, District of Arizona (Local Rules).

Dated this 15th day of April, 2014.

Jennifer G. Zipps
United States District Judge